1817.

ADSIT
v.
ADSIT.

*E. ADSIT *against* ABIGAIL ADSIT.

Where a testator gave to his wife 500 dollars, "to be left in the hands
of his executors, to be paid to her for her support, at any time, or at
all times, as her need might require;" and, also, gave her what house-
hold goods she needed; and, after bequeathing pecuniary legacies to
his grandchildren, directed his farm, &c. to be sold by his executors,
who sold it for 6,000 dollars, and the wife, after the death of the testa-
tor, accepted the *legacy*, which was paid to her out of the proceeds of
the sale of the farm: it was held, that the legacy was not, acording to
a fair construction of the will, given in lieu of, or in bar of, *dower*, but
as a mere pecuniary bequest. That the acceptance of it by the widow
did not affect her right to dower; and that the purchaser of the farm
took it subject to the claim of dower.

Where a legacy to the wife is not declared, by express terms, to be in lieu
of dower, it will not be so intended, unless such intention can be de-
duced, by clear and manifest implication, from the provision of the
will, so that the claim of dower would be inconsistent with the will,
or repugnant to the dispositions made by the testator. It must, in fact,
if admitted, disturb and defeat the will.

*May*, 10th.     SAMUEL ADSIT, deceased, in his lifetime, was seised
of a farm in *Dutchess* county, and the plaintiff, who is his
grandson, lived with him several years, in order to manage
the farm, and take care of him and his wife, they being very
aged. In *November*, 1813, *S. A.* leased the farm to the
plaintiff during the life of *S. A.*, and for one year thereafter;
and the plaintiff and *S. A.* entered into articles of agree-
ment, under seal, by which *S. A.* covenanted to bargain and
sell the farm to the plaintiff, on his paying, within one year after
the death of *S. A.*, 6,000 dollars to his executors, who should
then convey the farm to the plaintiff. The plaintiff continued
in possession of the farm, under the lease, until the death of
*S. A.*, in *April*, 1806. By his *will*, made the 24th of *Janu-
ary*, 1805, *S. A.* gave to his wife 500 dollars, "to be left in
the hands of his executors, to be paid to her, for her support,
at any time, or at all times, as her need might require." He
also gave to her what household goods she might need;
[ * 449 ]     *and gave to his three grandsons, by name, (the plaintiff
being one,) 325 dollars each; and to his five granddaugh-
ters, by name, each 175 dollars, to be paid after the sale of
the farm; and, after the payment of all debts and legacies,
he directed the *residue* to be divided into six equal shares,
which he distributed among his children and grandchildren,
&c. He also directed his movables to be sold as soon as
convenient, and his farm to be sold within one year, and the
money to be paid to the legatees, as the executors might
think proper.

346

The plaintiff, after the death of *S. A.*, continued in possession of the farm, and, having paid to the executors the 6,000 dollars, they, on the 11th of *April*, 1807, conveyed to him the farm, being 303 acres, in fee. The personal estate of the testator, after paying his debts, was insufficient to pay any part of the legacies, all of which, there being no other real estate, depended on the sale of the farm. The bill stated, that the defendant knew of the lease, the agreement, the will, and the sale to the plaintiff, by the executors, and made no objection, nor claimed any dower, but accepted the legacy, which was paid to her out of the proceeds of the real estate. That the defendant was 91 years of age, and claimed her dower in the farm, and had brought actions at law to recover it, and the suits were proceeding against the plaintiff, and *J. C.*, to whom he had sold part of the farm. The bill prayed for an injunction to stay the suits at law, and that the defendant might be barred of her claim of dower, &c. An injunction was issued according to the prayer of the bill.

The defendant, in her answer, filed the 20th of *September*, 1815, admitted the material facts stated in the bill, but alleged that she explicitly stated, when the deed was given to the plaintiff, that she intended to claim her dower, and that she never declared herself satisfied with the provisions *in the will; that she received a part only of the legacy, 367 dollars, not in lieu of dower, but stated, when she received it, that she should claim her dower, if necessary.

*H. Bleecker*, for the defendant, on the merits stated in the answer, now moved to dissolve the injunction. He contended, that the testator had not declared, in express terms, nor was it to be collected by necessary implication from the provisions in the will, that the legacy to the defendant was to be in lieu of dower; and, consequently, that the defendant was not to be put to her election, but was entitled to the testamentary provision, and, also, to her dower at law. He cited *Co. Litt.* 6. note 227. by *Hargrave.* 1 *Johns. Rep.* 307. 2 *Vernon*, 365. 1 *Lord Raym.* 438. 8 *Mod.* 152. *Ambler*, 682. 8 *Vin. Abr.* 366. *Prec. in Ch.* 133. 1 *Bro. Ch. Cas.* 292. 2 *Bro. Ch. Cas.* 347. 362. 3 *Woods.* 493 3 *Vesey*, 149.

*J. Tallmadge*, contra. He objected to the motion, at this time, as the cause was at issue, and parol proof had been taken, the effect of which, on the question arising in the will, could not be determined, as the proof was not before the Court.

*1817.*

ADSIT
v.
ADSIT.

[ * 450 ]

*May* 19th.

1817.

ADSIT
v.
ADSIT.

THE CHANCELLOR. This is a motion to dissolve the injunction on the coming in of the answer.

The question on the will is, whether the defendant is entitled to her dower, as well as to her legacy; if not, then whether she is still entitled to her election, notwithstanding a considerable part of the legacy has been received.

I am not prepared to say what effect parol proof may have on this question; and, therefore, I shall give the plaintiff an opportunity to bring the cause to a hearing before I dissolve the injunction; but I have no difficulty, in the mean time, in saying, that there does not appear to be any [ * 451 ] *thing in the will itself to bar the widow, or to put her to her election.

If the legacy is to be taken in lieu of dower, I should think that the defendant is entitled to her election, notwithstanding her acceptance of the legacy; for it is evident that she did not, in that case, act with a proper understanding of the consequence of that acceptance, but was under mistaken impressions. (*Wake* v. *Wake*, 1 *Vesey, jun.* 335.)

The legacy is not declared, by any express words in the will, to be in lieu of dower. The inquiry, then, is, whether such an intention in the testator, is to be collected by clear and manifest implication from the provisions in the will. To enable us to deduce such an implied intention, the claim of dower must be inconsistent with the will, and repugnant to its dispositions, or some of them. It must, in fact, disturb or disappoint the will. This appears to be the result of an historical review of the cases upon this greatly agitated subject. According to this test, the defendant is entitled to her dower as well as to the legacy; for every bequest can take effect, and every disposition of the will be fulfilled, consistently with the operation of the claim of dower. The direction given in the will to sell the farm, is not, of itself, a circumstance that is to alter this construction; for it is well understood, that the purchaser takes the estate subject to that claim. The title to dower is paramount to the testator's title, and he has no control over it. All the cases, however irreconcilable they may be in other respects, agree in this, that a devise of the lands to trustees to sell, or a direction to the executors to sell, is understood to pass the estate subject to dower. There is no inconsistency between the execution of such a power and the claim of dower. There is no pretence even of hardship in this case upon the testator's grandson, who now comes forward to repel the claim, because the purchase of the farm was in pursuance of a contract made *with the testator, and for a price agreed on, long before he made his will. The parties must have understood the contract as referring only to the testator's right,

[ * 452 ]

and that the land would pass *cum onere,* or subject to the well-known contingency of dower.

The bequest of a sum of money to the wife, is never admitted to be, of itself, and unconnected with other circumstances, a substitute for dower. It is considered a voluntary gift, and does not affect her legal rights. Every devise or bequest imports bounty, and does not naturally imply satisfaction of a pre-existing encumbrance. But there is one expression in the will which may seem to mark a design, in the testator, to give the 500 dollars in lieu of dower, and that is, the declaration that it was to be paid her, *for her support.* If this contains sufficient evidence of a clear, unambiguous intention in the testator to substitute that legacy for the dower, then the defendant ought to be put to her election; for if she takes a benefit under the will, she must conform to it, in all respects, as far as she is able. It would be unconscientious in the wife to take the dower, and, also, what the testator intended to be in lieu of it. The great point here is, Does the gift of the 500 dollars furnish clear and undoubted evidence of such intention? May not this sum have been intended as auxiliary support, and not as an entire and only provision for her maintenance? It was a provision far inferior in value to her dower. It was a very inadequate support for her during life. The sum is not given absolutely, out and out, but is to be *left in the hands of the executors,* and to be paid to her *as her need might require.* The better opinion is, that it was intended as a mere gratuity, or as a cumulative provision, and created for greater caution. A well-rooted and anxious affection would naturally have made this small pecuniary provision for the better comfort of an aged wife, without any intention of depriving her of her more ample and valuable common law resource. The *fact that the testator gives her also the requisite *household goods,* shows that he contemplated her ability, and, perhaps, desire to live by herself. I cannot find, in this bequest, evidence sufficient to satisfy my mind of a certain or manifest intention that it should be in lieu of dower; and the acceptance of it is not inconsistent with the claim of dower, nor is the assertion of that claim repugnant to, or destructive of, any provision in the will.

[ * 453 ]

The weight of the authorities applicable to this case, is decidedly in favor of the widow's claim to dower, notwithstanding the bequest.

In *Lawrence* v. *Lawrence,* (2 *Vern.* 365. 1 *Eq. Cas. Abr.* 218, 219.) the testator devised some personal legacies to his wife, and also devised to her part of his real estate, of the yearly value of 130*l.* during her widowhood, and the remainder of his whole estate he devised to the plaintiff. It

was held by Lord Chancellor *Somers*, that though what was given to the wife was not declared to be in lieu of dower, yet it might be plainly collected from the will that it was so intended, because the testator devised all other his real estate to other uses; and he held the widow to her election, between the dower and the devise.

It is to be observed, that the lord chancellor put the case upon a *plain intent* to substitute the provisions in the will, for the dower. Whether he was or was not mistaken in his inference, yet the ground he took was correct, in requiring a manifest intention to bar the dower. That case was also much stronger than the present, for there was not only a pecuniary bequest, but a devise of an interest in the land. But this decree of Lord *Somers* was, afterwards, on a rehearing before Lord Keeper *Wright*, in 1702, reversed, because it did not appear that the testator intended to bar the wife of her dower. The same point, under the same will, in 1715, came before Lord Chancellor *Cowper*, who concurred in opinion with the lord keeper; *and that last decree was affirmed, on appeal to the house of lords. (1 *Bro. P. C.* 591.)

The next case, in the order of time, was that of *Hitchin* v. *Hitchin*. (*Prec. in Ch.* 133. 2 *Vern.* 403.) The testator devised certain lands to his wife for life, without saying more, and devised the residue of his lands to other purposes. The decision of Lord *Somers*, in *Lawrence* v. *Lawrence*, which was made the year before, was urged against the widow's claim of dower in the lands devised to others, and that decision had not then been reviewed and reversed. But the lord keeper held, that the devise was not to be looked upon as any recompense or bar of dower, but as a voluntary gift. In *Lemon* v. *Lemon*, (5 *Geo.* I. 8 *Viner*, 366. *Pl.* 45.) the testator devised lands to his wife for life, which were of more value than her dower, but not devised to her expressly in lieu of dower; and he devised other lands to his brother, in which the widow claimed her dower. Lord Chancellor *Parker*, on the strength of the case of *Lawrence* v. *Lawrence*, as settled in the house of lords, held, that the widow was entitled to her dower, notwithstanding the devise.

These several cases established the rule, that not merely a pecuniary bequest, but even a devise of lands, though for life, and though of greater value than her dower, was not to be taken in bar of dower, unless so expressed. Lord *Camden* admitted, that these cases were good law, because the will, in all those cases, was consistent with the claim of dower. The dowable estate was devised generally, and passed *cum onere*. But since those decisions, a very interesting discus-

sion has arisen, and been continued through several of the cases, on the effect of an annuity given to the wife for life, and charged upon the dowable estate.

Lord *Hardwicke* appears to have considered the annuity as no bar, according to the imperfect note of the case of *Pitts* v. *Snowden,* (cited in *App.* to 1 *Bro. Ch. Cas.* in \*2 *Vesey, jun.* 579. and 3 *Vesey, jun.* 252.) the testator gave his wife an annuity of 50*l.*, chargeable upon the lands upon which dower was sought, with a power of entry and distress, and which lands he devised to his children, and the widow was held entitled to both. But in *Arnold* v. *Kempstead,* (*Amb.* 466.) a contrary decision seems to have been made. In that case, the testator gave his wife certain leasehold houses, for life, and an annuity of 10*l.* during widowhood, and then disposed of all his freeholds, *subject to that annuity.* Lord Chancellor *Northington* considered, that here was a manifest intention of the testator to give the annuity in satisfaction of dower, as the lands were devised subject to that annuity, and the claim of dower would be in contradiction to the will.

The general doctrine, in this case, was perfectly sound, whatever may be thought of its application. The case of *Lawrence* v. *Lawrence,* as finally settled, was admitted to be the rule; but here the intention was held to be *manifest,* and the claim of dower in *contradiction* to the will. The case of *Villaval* v. *Galway,* (*Amb.* 682. 1 *Cruise's Dig.* tit. Dower, ch. 5. sec. 33. S. C.) was decided soon after, by Lord *Camden,* by whom all the cases were ably examined, and he went largely into the argument, to show that the annuity was inconsistent with the claim of dower. In that case, the will gave the wife an annuity of 200*l.* with a power of entry and distress; and, subject thereto, he devised his estates in trust for his daughter. The lord chancellor followed the case of *Arnold* v. *Kempstead,* and, in opposition to that of *Pitts* v. *Snowden,* held, that a rent charge given to the widow, issuing out of the estate, subject to dower, and with power of distress, was a bar of dower, because such a claim would disappoint or disturb the will, and be inconsistent with it. As an annuitant, the widow must be out of possession of the whole land, and, as dowress, she must be in possession of part. The trustees could not hold the whole, subject to the annuity \*and distress, without being in possession of the whole; and they were to hold the whole in trust, and for the widow, as an annuitant. But the claim of dower would put her in possession of a part, and sink so much of the annuity; whereas, the very gift of an annuity, chargeable upon the real estate, does, from the nature of the interest, throw her out of possession; and, by this course of reason-

ing, the chancellor undertook to prove, that the claim of dower was inconsistent with the will, and that the acceptance of the annuity barred the dower. In *Jones* v. *Collier*, (*Amb.* 830.) decided by Sir *Thomas Sewell*, as master of the rolls, these two latter decisions, on the effect of an annuity to bar dower, in the lands on which it is charged, were followed. So also, Mr. J. *Buller*, when setting for the lord chancellor, in *Wake* v. *Wake*, (3 *Bro*. 255. 1 *Vesey, jun.* 335.) followed the same decisions, on the same question.

In the subsequent cases it would appear, however, that even this doctrine of holding the wife barred by an annuity charged upon the real estate, is questioned and shaken, and finally overruled.

Thus, in *Pearson* v. *Pearson*, (1 *Bro*. 292.) land was devised to the son, subject to an annuity to the wife, and the question was, whether this rent charge to the wife was a bar of her dower, without being so expressed. Lord *Rosslyn* held the law to be settled, that the gift of an annuity to the wife, might or might not be a bar, according to the language of the will. If the value of the land should not be sufficient to satisfy the annuities, and the dower, it would prove an intention to bar the dower, otherwise, there was nothing in the will to show such an intention, and the cause stood over to inquire into the value of the land; and it was agreed that if it was not sufficient to satisfy both, the widow must elect. Again, in *Brown* v. *Perry*, (*Dickens*, 685.) according to a short and imperfect note of the case, Lord Ch. *Thurlow* restored, in full vigor, the *efficacy of the ancient authorities The testator devised to his wife some particular estates for life, and also bequeathed her specific parts of his personal estate, and he held that she was not barred by the acceptance of the devise and bequest. The law gave her dower, and what her husband gave her was an addition. In *Foster* v. *Cook*, (3 *Bro*. 347.) Lord *Thurlow* held, that even an annuity to the wife for life, and charged upon the real estate, in the hands of trustees, was no bar of dower, which was paramount to the will. This was in direct contradiction to the cases already mentioned in favor of the bar arising from the annuity; and it is the more striking, as these cases were cited by the counsel, and pressed upon his lordship's attention. The decisions of Lord *Hardwicke*, and of Lord *Thurlow*, are thus placed in direct opposition to the intermediate decisions on this point of the annuity.

In the recent cases, this whole subject has received a further investigation, and they will be found to be extremely interesting on this greatly litigated rule of construction.

The case of *Straham* v. *Sutter*, (3 *Vesey*, 249.) came before Lord *Alvanley*, as master of the rolls. There was a de-

352

vise to the wife of 20 guineas, " for her immediate support and maintenance," and an annuity during her widowhood, and a gift also to her, of the household furniture, and the testator's stock in trade. He devised his real estate to his son, and directed the rents and profits to be applied to his education.

This case is considerably analogous to the one now before me, and, I think, would afford a much stronger inference against the right to dower.

Lord *Alvanley* held, that the claim of dower was not inconsistent and irreconcilable with the devise to the son, and that it was not a necessary inference that the testator intended that the devisee should take it unencumbered by the dower of the wife. The annuity, in this case, was not *charged upon the premises of which the wife was dowable, and, therefore, it was not exactly like the cases in *Ambler*. The gift of an estate out of which the widow was dowable, did not prevent her from taking any other estate the testator thought proper to give her; and he recognized the authority of the elder cases, by which the gift of an estate to a third person did not exclude the wife from claiming dower out of it. He concluded that the widow in this case was not barred. In *French* v. *Davies*, (2 *Vesey, jun.* 572.) Lord *Alvanley* had previously gone, still more minutely, into an examination of all the cases on the subject. A devise of all the estate was made to the wife and others, in trust to sell, and great benefits were given to the wife out of the proceeds. This presented a very strong case in support of the inference, that the testator meant to bar the dower, but he ruled otherwise. In the three cases from *Ambler*, the demand of the annuity was out of the same estate as the dower, but here the claim was out of a fund composed of the produce of the real and personal estate mixed together; and the master of the rolls held, that merely directing the estate to be sold was not a bar, for the wife might take her dower out of the purchase money. He did not, therefore, expressly contradict the authority of the cases in *Ambler*, though he evidently would have done so, if necessary, by preferring, as he did, the old and the modern cases, which were irreconcilable with those intermediate decisions. It appeared to him, that here was no manifest and certain intent to bar the dower, though he believed the husband would have imposed such a condition, if he had recollected the dower. But the husband had not done so, and there was no clear, incontrovertible result from the will, that he meant to exclude her; no legacy would be disappointed. The dower and all the dispositions could stand together. There was no repugnancy between the dispositions in the will and the dower. The only argument

1817.

ADSIT
v.
ADSIT.

[ * 458 ]

was, that the estate would not sell for so *much as if dower was not insisted on, but that was no reason why a person taking a legacy was to be prevented from setting up an encumbrance.

In *Greatorex* v. *Cary,* (6 *Vesey,* 615.) the testator had given to the wife 150*l.* a year, during her widowhood, and charged it on the real and personal estate. He also bequeathed to her his household goods, &c., and devised the residue of his estate to his sister. This brought up again the effect of the annuity on the claim of dower; and the present master of the rolls, Sir *Wm. Grant,* decided the case in her favor, upon the authority of *Foster* v. *Cook,* and held that here was no repugnancy, and that it did not appear clearly that the testator meant so to dispose, that if she should claim dower, it would disappoint the will.

The subject was brought under the consideration of Lord *Redesdale,* in *Birmingham* v. *Kirwan,* (2 *Schoales & Lefroy,* 444.) and he said the clear deduction from all the cases was, that the intent to exclude the right of dower by a voluntary gift, must be demonstrated by express words, or by clear and manifest implication, and this implication must arise from some provision in the will, inconsistent with the assertion of the claim. He ruled, accordingly, in the case before him, that a devise to the wife of a house and 170 acres for life, at a low rent, and with directions to keep it in repair, was inconsistent with the assertion of a right of dower *in the same lands,* but not inconsistent with a claim of dower in the rest of the estate which he had devised to others; and he put the wife to her election as to the one tract, and allowed her claim as to the rest of the estate. He admitted that a devise of the house, &c. simply to trustees, might be subject to dower, but that the special directions concerning it, rendered the claim inconsistent with the dower. The dower would be inconsistent with her own title to one third; and upon the authority of the distinction in this case, the vice chancellor of *England,* in *Dorchester* v. *Effingham,* (*Cooper's Eq. Rep.* 319.) *confined the claim of dower to the residue of the estate, but disallowed it as to a part, in the case where the testator had devised a legacy to the wife of 500*l.,* and a house and 53 acres, part of his real estate. He said he would not undertake to conjecture that a testator meant what he had not said, though it was probable the testator had not any intention, one way or the other, as to dower out of the rest of his estate.

I have thus reviewed the principal cases on this subject, and, though many of them may not be entirely applicable, I thought it would be useful to examine the question, on the ground of authority, in all its bearings, and to show the leading principle which uniformly pervades the cases. The re-

[ * 460 ]

sult clearly is, that there is not a single case that contradicts the defendant's claim ; but, on the contrary, if the question under this present will had been the one in any of those cases, there would probably not have been a moment's doubt or difficulty in the minds of any of the learned men who have bestowed such pains and talent in their discussions.

The only color that can be given to the plaintiff's claim, must, then, arise from the proof which may have been taken in the cause; whether admissible, and, if so, what effect it ought to have, I cannot now say ; and, in order to have that part of the case discussed, I shall, for the present, deny the motion, with liberty to the defendant to renew it, if the plaintiff does not set down the cause for hearing at the next term.