ALLETTA A. AKIN, APPELLANT, *v.* SARAH A. KELLOGG AND OTHERS, RESPONDENTS.

*Dower — action to be relieved from the consequences of a failure to renounce, within a year, the provisions made in lieu of dower by a will — 1 R. S., m. p. 742, sec. 14 — not allowed upon the ground of ignorance where no effort to become informed has been made — nor because the provision made by the will proves to be valueless, at least not as against a grantee of the testator.*

This action was brought by the plaintiff, the widow of Benjamin Akin, deceased, to recover dower in certain land formerly belonging to him, and to be relieved from the consequences of her failure to renounce, within the statutory time, the provisions for her benefit in his will, on the ground of alleged fraudulent representations made to her by Asa B. Kellogg, executor of Akin and husband of the defendant Sarah B. Kellogg, to whom, prior to his death, Akin had conveyed the land, by a warranty deed expressing a consideration of one dollar, in which the plaintiff did not join, and which was not recorded until four days after his death. At the time of Akin's death he owned a house in New York, which then rented for $3,000, and had rented for $4,000, and four stores in Albany, and the inventory of his personal estate amounted to about $35,000. On a final accounting of the executor, had before the surrogate in May, 1885, which included the avails of the New York house and the Albany stores, there was only enough property to pay about seventy-seven one-hundredths on the debts of the deceased, including a debt to the plaintiff.

It was urged, in behalf of the plaintiff, that even if there were no fraud yet she made the election in ignorance of the facts, and, therefore, should be relieved.

*Held,* that as the evident object of the statute (1 R. S., m. p. 742, § 14), giving to the widow a year within which to elect, was that she might have time to examine as to the value of the testamentary provision for her benefit, and as there was no evidence in this case showing that the plaintiff made any inquiry as to the property, or sought any information to enable her to make her election, it would be unreasonable that she should repudiate her election on the ground of ignorance when she had made no effort to become informed.

It was further urged that even if there were no fraud, and even if the plaintiff knew the condition of the estate and chose to accept the testamentary provisions, yet as these provisions have been proved to be of no pecuniary value, she was remitted to her dower right.

*Held,* that while an invalid provision is no provision, yet as the provision in this case was valid and might have proved to be valuable, and she chose to take it, the fact that it did prove to be valueless gave her no right to change her election.

That, even if it should be thought that, as against an heir or devisee, the widow might claim dower, when the testamentary provisions had proved valueless, although the statutory time had elapsed, yet she ought not to have this privilege, as against the defendant, the grantee, under a warranty deed of the testator.

APPEAL by the plaintiff from a judgment dismissing the complaint entered upon a trial of the action by the court and a jury at the Rensselaer Circuit.

A demurrer to the complaint was sustained at Special Term, but was reversed by the General Term on appeal, the decision being reported in 39 Hun, page 252.

*Matthew Hale,* for the appellant.

*L. Laflin Kellogg,* for the respondents.

LEARNED, P. J.:

The plaintiff, the widow of Benjamin Akin, deceased, brings this action to recover dower in certain land formerly belonging to him, and for that purpose to be relieved of her failure to renounce, within the statutory time, the provisions for her benefit in his will. She claims to be thus relieved, on the ground of alleged fraudulent representations made to her by Asa B. Kellogg, executor of Benjamin Akin, and husband of Sarah B., to whom, prior to his death, Akin had conveyed this land by a deed, in which the plaintiff did not join. Akin died October 10, 1881. By his will he gave to plaintiff, in lieu of dower, one-third of his personal property, and as *cestui que trust,* a life estate in one-third of his real property. The farm in Greenbush, now in question, Akin had conveyed, in May,

1877, to Sarah B. Kellogg, his daughter. But the deed was not put on record until four days after his death. At the time of his death he owned a house in New York, which had, at one time, rented for $4,000, and which rented about the time of his death for $3,000, and he owned also four stores in Albany. The inventory of his personal estate was about $35,000. On a final accounting of the executor, however, which included the avails of the New York house and the Albany stores, there was only enough property to pay about seventy-seven one hundredths on the debts of the deceased, including a debt to the plaintiff. This accounting was had before the surrogate May, 1885, and the final decision therein in the Court of Appeals was in January, 1887. The plaintiff, therefore, could receive nothing under the provisions of the will. It would seem that a large claim owing to the deceased proved worthless. Apparently, too, the real estate was not as valuable as it had been thought to be. The plaintiff testified that she did not know of the deed from the deceased to Sarah B. Kellogg until the commencement of the proceeding before the surrogate. The plaintiff, after Akin's death, remained on the farm (which was the homestead) until after the holidays, at the request of Mr. Kellogg. She was there, also, in the spring of 1883. When, in the spring of 1883, she went to Greenbush, she stayed at the Teller house. Mr. and Mrs. Kellogg went up to the farm in Greenbush, as they had always done.

The complaint alleges that Asa B. Kellogg represented to the plaintiff that it would be more advantageous for her to accept the provisions of the will than to take dower, and that, ignorant of the true situation, and relying on these representations, she neglected to renounce the testamentary provisions within the year. It is very evident, then, that, on this question of fraud, no statements can be material, except such as were made during the year after Akin's death. Any statement made subsequently, however false, could not have induced her not to renounce the testamentary provisions within the year. Certain statements, then said to have been made at the Teller house, in 1883, cannot be material, as the time for election had then expired. The plaintiff testifies that, the day after Akin's death, Kellogg read the will to her and remarked : " You receive much more than if you received your dower." Again she testifies that, shortly after the funeral, Kellogg said : " Money enough for us all ;

four months here and eight months in the city, and we can live like fighting cocks." To support the charge of falsehood and fraud, it would be necessary to show that Kellogg knew these statements to be untrue. Although Kellogg knew that Akin had conveyed the farm, yet it does not appear from that fact, or from the evidence, that he did not believe that the provisions of the will were better than dower. As to the real estate (other than the farm), the provisions of the will are substantially the same as dower. The question, then, whether Kellogg's statement was correct would depend on this: Whether one-third of the personal property was worth more than dower in the farm? The dower would be only for her life. One-third of the personal went to her absolutely. It appears by the accounting that there was a decrease of about $34,000 on the inventory; due principally to the insolvency of a debtor to the estate. This shows that Kellogg might have believed that one-third of the personal was better than dower in the farm; while the result showed that he had been mistaken. Furthermore, the statement made by Kellogg was but an expression of opinion. He made no false statement of facts. He gave only an opinion, the correctness of which was necessarily dependent upon many contingencies. The opinion, too, was given before any investigation could have been made as to the conditions of the estate. The cases in which a statement of opinion can be considered a fraudulent representation are few, and generally depend on some peculiar circumstances. It is said, however, that the conveyance of the farm was concealed. On the contrary, the deed was put on record several days after Akin's death, and thus public notice was given. The letter of September 20, 1882, to the plaintiff, speaks of the farm as " a separate account, in which he only acts with a power of attorney." Thus there was a statement within the year that the farm was not a part of the estate which the executor was managing. We do not think that the plaintiff showed fraud on the part of Kellogg. It is urged, however, on her behalf, that, even if there were no fraud, yet she made the election in ignorance of the facts, and, therefore, should be relieved. It appears, by her testimony, that she had talked with the deceased about his property. She knew of the New York and Albany real estate. She knew of a claim against Isaac W. Akin and against Schuyler. She also knew that the deceased owed her $5,000, and owed Mrs.

Crapo $6,000. She probably did not know that the executor would be unable to collect the Isaac W. Akin debt. And it does not appear what was the pecuniary condition of Isaac W. at the death of the deceased. Now, it is evident that the object of giving to the widow a year within which to elect, is, that she may have time to examine as to the value of the testamentary provisions for her benefit. (1 R. S., m. p. 742, § 14.) This provision was introduced by the Revised Statutes, and it was said by the revisers that some mode should be presented for evincing the election, and some time within which it should be made. It is important to others interested in the estate that it should be definitely known what election the widow makes. She ought, therefore, to inform herself as to the estate, if she is ignorant. It would be unreasonable that she should repudiate her election on the ground of ignorance, when she had made no effort to become informed. We do not find in this case any evidence that, within the year, the plaintiff made any inquiry as to the property, or sought any information to enable her to make her election. The alleged remark of Kellogg, that she would receive $1,300 a year, was, we think, made after the year had expired. Even if not, it was only an expression of opinion. Had she desired, she could have found out as to the value of the real estate, incumbered as it was, and could have asked the executor about the personal property. In the case of *Hindley* v. *Hindley* (29 Hun, 318) it does not appear under what circumstances the paper was obtained; what opportunity the widow had for inquiry, or what inquiry she made. In *Larrabee* v. *Van Alstyne* (1 Johns., 308), cited in *Hindley* v. *Hindley*, the views of the judges varied. One said the bequest was not expressly in lieu of dower. Another, that collateral satisfaction could not be pleaded at law in bar of dower. Another, that the bequest had not been paid, and the decision was made long before the Revised Statutes.

The plaintiff further urges that, even if there were no fraud, and even if she knew the condition of the estate and chose to accept the testamentary provisions, yet, as these provisions have been of no pecuniary value, she is remitted to her dower right. Where there has been no valid testamentary provisions, then the position of the widow is just the same as if there had been no pro-

vision at all in the will. An invalid provision is no provision. But that is not the case. The provision was valid. It might prove valuable and it might not. She chose to take it with the chance of its proving valuable. That it proved valuless gives her no right to change her election. If a contrary doctrine were to prevail, then, should the testamentary provisions prove not valueless, but less valuable than the dower, it would be necessary to relieve the widow *pro tanto* from the effect of her election. Statutes, in some of the States, have provided for the case of loss of testamentary provisions for the widow by insolvency of the estate or by paramount title. We have no such statute. We cannot add to our statute a clause, that if the testamentary provisions should afterwards prove not to be as valuable as the dower, then the widow may make a new election.

It is suggested that the deed to Sarah B., expresses a consideration only of one dollar. No proof is given as to the actual consideration. Sarah B. holds, not as heir or devisee, but as grantee. The purchase-price may have gone into the personal estate of the deceased, of which the will gave one-third to the plaintiff. The deed has a covenant of warranty, hence it is important to the grantee that the plaintiff should not be relieved from her election after the estate of the covenantor has been shown to be insolvent and has been settled. For if the plaintiff should have dower out of this land, Sarah B. would have a right of action on the covenant. But meantime the estate of the testator has been settled and applied to other claims against him, largely to a claim of the plaintiff. Thus Sarah B. has been deprived of any practical redress on the covenant of warranty. Even then, if it should be thought that against an heir or devisee the widow might claim dower, when the testamentary provisions had proved valueless, even after the statutory limitation, certainly she ought not to have this privilege against this grantee of the testator.

The judgment should be affirmed, with costs.

LANDON and INGALLS, JJ., concurred.

Judgment affirmed, with costs.